UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ARLANDUS M. NOLEN,

        Plaintiff,

v.                                                            Case No. 2:06-cv-125
                                                              HON. ROBERT HOLMES BELL

TIMOTHY LUOMA, et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

        Plaintiff Arlandus M. Nolen, an inmate currently confined at the Marquette Branch Prison (MBP), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against several employees of the Michigan Department of Corrections (MDOC). Specifically, Defendants include Warden Timothy Luoma, Deputy Warden Darlene Edlund, Assistant Deputy Warden H. Ansell, Litigation Coordinator Janice Ansell, Assistant Deputy Warden William Luetzow, Inspector Unknown Burnette, Resident Unit Manager Terri Arredia, Case Manager R. LaLonde, Grievance Coordinator Beth Smith, Grievance Coordinator T. Tollefson, Dr. Unknown Weiss[1], Sergeant Matt Obiden, Sergeant Leslie Haataja, Sergeant Unknown Kemp, Sergeant Brady Perry, Sergeant Robert Warr, Resident Unit Officer Rickey Wertenan, Resident Unit Officer Kelley Reynolds, Resident Unit Officer Brian Hoover, Resident Unit Officer Unknown Haataja, Resident Unit Officer Unknown LaTendresse[2], Resident Unit Officer Unknown Linberg, Resident Unit Officer G. Kinnunen, Resident Unit Officer Unknown Johnson, Resident Unit Officer Andy Hill, Resident Unit Officer

_____

[1]Paul Wiese.

[2]Lataendresse.

Unknown Minirich, Resident Unit Officer Unknown Pellow, Resident Unit Officer Unknown Etelamaki, Resident Unit Officer Unknown Jacobson, Resident Unit Officer Kevin Lampella, Resident Unit Officer Unknown Redinger, Resident Unit Officer T. Tremble, Corrections Officer Unknown Kommes, Corrections Officer Unknown Nagele, Resident Unit Officer Unknown Schnider, Hearing Officer Susan Burke, Internal Affairs Manager Stephen Marscke, Resident Unit Officer L. Miller, Prisoner Affairs James Armstrong, Governor Jennifer Granholm, Case Manager Brandon Sweeney, Resident Unit Officer Unknown Kutchie, Resident Unit Manager Daniel Lesatz, and Resident Unit Manager W. Jondreau.

Plaintiff's complaint alleges that Defendants retaliated against him for filing grievances by engaging in a variety of misconduct against him, including seizing and destroying his property, denying him food, water, yard, cleaning supplies, and bedding, threatening him, falsifying misconduct charges against him, depriving him of religious material and the ability to practice his religion, interfering with legal mail, improperly placing him on modified access to the grievance procedure, and assaulting him with no provocation. For relief, Plaintiff requests damages and costs.

Presently before the Court is the Defendants' Motion to Dismiss for failure to comply with the exhaustion requirement (docket #126), pursuant to Fed. R. Civ. P. 12(b)(6), and Motions for Summary Judgment (docket #84, #141, and #148), pursuant to Fed. R. Civ. P. 56. Plaintiff has responded to these motions and they are ready for decision.

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the pleading, requiring the court to determine whether the plaintiff would be entitled to relief if everything alleged in the complaint is true. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can

prove no set of facts in support of its claim which would entitle [the plaintiff] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  The court must construe the complaint in the light most favorable to plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  A judge may not dismiss the complaint simply because he disbelieves the complaint's factual allegations. *Conley*, 355 U.S. at 47.

Generally, a complaint need only give "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *In re Delorean Motor Co. v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (*quoting Conley*, 355 U.S. at 47).  The fundamental purpose of pleadings under the Federal Rules of Civil Procedure is to give adequate notice to the parties of each side's claims and to allow cases to be decided on the merits after an adequate development of the facts. *Mayer*, 355 U.S. at 638.  While this standard is decidedly liberal, it requires more than the bare assertion of legal conclusions. *Delorean*, 991 F.2d at 1240.  "In practice, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id.* (internal quote omitted).

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir.), *cert. denied*, 126 S. Ct. 650 (2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir.), *cert. denied*, 126 S. Ct. 338 (2005).  The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005).  The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

When the party without the burden of proof (generally the defendant) seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 788 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *see Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir. 2006). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989). "A mere scintilla of evidence is insufficient; 'there must be evidence on which the jury could reasonably find for the [non-movant].'" *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252); *see also Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

> [A] nonmoving party may not avoid a properly supported motion for summary judgment by simply arguing that it relies solely or in part on credibility considerations . . . .  [I]nstead, the nonmoving party must present affirmative evidence to defeat a properly supported motion for

> summary judgment. [T]he party opposing summary judgment must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and . . . the opposing party may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof.

*Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004), *cert. denied*, 543 U.S. 1120 (2005) (citations omitted).

Where, however, a defendant attempts to establish an affirmative defense on summary judgment, it bears the burden of proving "that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 501 n.2 (6th Cir. 2007).

Initially, the undersigned notes that Plaintiff has moved to voluntarily dismiss Defendants Kemp and LaLonde (docket #130), stating that he failed to exhaust his administrative remedies with regard to these individuals. The undersigned recommends that the court grant this dismissal.

In their May 23, 2007, motion to dismiss, Defendants Janice Ansell, Burnette, Terri Arredia (Smith), Beth Smith, T. Tollefson, Weiss, Leslie Haataja, Warr, Kinnunen, Hill, Pellow, Etelamaki, Jacobson, Redinger, Tremble, Kommes, Nagele, Marscke, Armstrong, and Granholm claim that Plaintiff failed to exhaust his administrative remedies with regard to his claims against them. Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532

U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective Dec. 19, 2003)[3] sets forth the applicable grievance procedures for prisoners in MDOC custody. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue with the staff member involved, unless prevented by circumstances beyond his or her control *Id.* at ¶ R. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process, and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶ X. The Policy Directive also provides the following directions for completing grievance forms: "[t]he issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ T (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within five business days of the response, or if no response was received, within five days after the response was due. *Id.* at ¶¶ R,

---

[3]The MDOC recently amended Policy Directive 03.02.130 on July 9, 2007. However, the 2003 version of the Policy Directive was in effect at all times applicable to this lawsuit.

DD.  The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances.  *Id.* at ¶ FF.  If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ R, HH.  The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.  *Id.* at ¶ HH.  The Prisoner Affairs Section is the respondent for Step III grievances on behalf of the MDOC director.  *Id.* at ¶ II.  Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process.  *Id.* at ¶ U.  "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ."  *Id.*

The Supreme Court held in *Woodford*, 126 S. Ct. at 2387, that the PLRA exhaustion requirement requires "proper exhaustion."  "Proper exhaustion" means that the plaintiff complied with the administrative agency's deadlines and "critical procedural rules," such as time limits for filing grievances.  *Id.* at 2386-388.  It is a precondition to any suit challenging prison conditions.  *Id.* Therefore, following *Woodford,* if a plaintiff's grievance was not filed in a timely manner pursuant to the state's administrative rules, the plaintiff has not properly exhausted his administrative remedies and the claim is barred.  The Supreme Court's recent decision regarding PLRA exhaustion, *Jones,* 127 S. Ct. at 922, did not modify this holding regarding "proper exhaustion."  To the contrary, the Court drew upon the reasoning of *Woodford* when it struck down the Sixth Circuit's rule barring prisoners from bringing suit against any defendant whom the prisoner had not named in a Step I administrative grievance:

> In *Woodford,* we held that to properly exhaust administrative remedies prisoners must "complete the administrative review process

in accordance with the applicable procedural rules," 548 U.S., at ----, 126 S.Ct. 2378 (slip op., at 5)--rules that are defined not by the PLRA, but by the prison grievance process itself. Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion. As the MDOC's procedures make no mention of naming particular officials, the Sixth Circuit's rule imposing such a prerequisite to proper exhaustion is unwarranted.

*Jones,* 127 S. Ct. at 922-23.[4]  The Court in *Jones* also struck down the Sixth Circuit's total exhaustion rule, finding that a district court may proceed on a prisoner's exhausted claims and dismiss the unexhausted claims. *Id.* at 924-26. Finally, the *Jones* Court overturned the Sixth Circuit's requirement that prisoners must specifically plead or demonstrate exhaustion in their complaints. *Id.* at 921. Rather, the *Jones* Court held that a prisoner's failure to exhaust is an affirmative defense under the PLRA. *Id.*

In their May 23, 2007, motion to dismiss, Defendants claim that Plaintiff submitted 18 grievances on December 29, 2005, alleging several instances of misconduct. Many of the issues asserted occurred in 2004 and were untimely. As a result, Plaintiff was placed on modified access to the grievance procedure. The modified access period is ninety days and may be extended an additional thirty days for each time the prisoner continues to file a prohibited type of grievance. MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ JJ (effective Nov. 1, 2000). While on modified access, the prisoner only can obtain grievance forms through the Step I coordinator, who

---

[4] As "the MDOC's procedures make no mention of naming particular officials," the *Jones* Court held that "the Sixth Circuit's rule imposing such a prerequisite to proper exhaustion is unwarranted." *Jones*, 127 S. Ct. at 923. The *Jones* Court, however, dealt with MDOC Policy Directive 03.02.130, effective November 1, 2000. In that version of MDOC Policy Directive 03.02.130 there was no requirement that particular officials be named in a Step I grievance.

determines whether the issue is grievable and otherwise meets the criteria under the grievance policy. *Id.*, ¶ MM.

Defendants state that on December 29, 2005, Plaintiff filed AMF-06-10-00085-28e, naming Defendants Ansell, Beth Smith, Terri Smith (Arredia), Haataja, Hill, Jacobson, Kinnunen, Pellow, and Etelamaki. This grievance, which involved incidents from August 11, 2004 until September 17, 2004, and had a "today's date" of September 17, 2004, was dismissed as being untimely. In addition, Defendants assert that Plaintiff failed to name Defendants Ansell, Haataja, Hill, Jacobson, Kinnunen, Pellow or Etelamaki in any other grievances from August 1, 2004 until the commencement of the instant lawsuit. In support of this assertion, Defendants refer to the attachments to Plaintiff's complaint.

Defendants also state that in various other grievances filed on December 29, 2005, Plaintiff named Defendants Weiss, Warr, Redinger, Tremble, Kommes, and Armstrong, which were all untimely. Defendants rely on the attachments to Plaintiff's complaint and contend that Defendants Redinger, Tremble, Kommes, and Armstrong are not named in any other grievance. Defendants further claim that Defendant Weiss is only named in one other grievance, AMF-05-08-02005-28e, which also names Defendants Terri Arredia (Smith), Beth Smith, Todd Tollefson, Steven Marske (Marschke), and Jennifer Granholm. This grievance alleges an incident date of July 17, 2005 and a "today's date" of July 22, 2005, but was not received until August 2, 2005 and was rejected as untimely. Plaintiff claims that this grievance was "held up" by Defendant Beth Smith. However, Plaintiff fails to explain why another grievance, which he filed on July 22, 2005, was not held up by Defendant Beth Smith and was received on July 25, 2005. In the step II response for AMF-05-08-

02005-28e, it was found that Plaintiff had not given a reasonable explanation for the grievance being untimely.

In addition to being named in AMF-06-01-00078-28e, Defendant Warr was also named in AMF-05-07-01936-28e, which was rejected as untimely. In that grievance, Plaintiff referred to an incident which occurred on July 9, 2005, and had a "today's date" of July 22, 2005. Finally, Defendants state that Defendant Burnett was only named in grievance AMF-05-04-00903-28e, which referred to incident dates of February 18, 2003, and February 21, 2005, and claimed a "today's date" of February 26, 2005, and March 30, 2005. Plaintiff's grievance was rejected as untimely at step I. At step II, the merits of the grievance were examined and found to be lacking, but at step III the step I rejection for lack of timeliness was found to be proper. Defendants contend that because the grievance was not timely, it did not serve to exhaust administrative remedies. In addition, Defendants claim that because the grievance did not allege any wrongdoing on the part of Defendant Burnett, any such claims have not been exhausted.

In his response to the motion to dismiss for failure to exhaust (docket #138), Plaintiff asserts that he did file specific grievances against the named Defendants which were denied on the merits, and that he appealed the denial of those grievances to step III. As noted above, Defendants base their claims regarding the alleged lack of exhaustion against Defendants Ansell, Weiss, Warr, Kinnunen, Pellow, Etelamaki, Redinger, Tremble, Kommes, Armstrong, Terri Arredia (Smith), Beth Smith, Tollefson, Marscke, Burnett, Lalonde, Haataja, Hill, Jacobson, Nagele, and Granholm solely on the attachments to Plaintiff's complaint. After the filing of Defendants' motion to dismiss for failure to exhaust (docket #126), the United States Supreme Court issued its decision in *Jones v. Bock*, 127 S. Ct. 910 (2007). As previously discussed, the Supreme Court in *Jones* held that

"exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints."  Moreover, the burden is on Defendants to show that Plaintiff failed to exhaust when asserting exhaustion as an affirmative defense.  Exhaustion is no longer a pleading requirement. The Supreme Court also rejected total exhaustion, holding that when a defendant establishes lack of exhaustion as an affirmative defense, only the unexhausted claim may be dismissed.  Accordingly, it is inappropriate to dismiss a case for failure to exhaust on a Rule 12(b) motion unless the plaintiff states in his complaint that he failed to exhaust his grievances against a defendant on a particular claim. The fact that Plaintiff attaches grievances to his complaint that may not show exhaustion of every issue presented is of no consequence, because Plaintiff has no duty to show exhaustion.  The burden lies solely with a defendant to show that Plaintiff failed to exhaust grievance remedies.  It is each defendant's responsibility to support a motion for summary judgment with specific reasons why a issue should be dismissed for failure to exhaust.  A general statement that Plaintiff failed to exhaust his grievance remedies will not be sufficient.  Moreover, where Defendants' claim that a grievance was not properly filed, it is also Defendants' burden to establish that Plaintiff's grievances were procedurally defective.  In *Woodford v. Ngo*, 126 S. Ct. 2378, 2393 (2006)*,* the Supreme Court held that a prisoner fails to satisfy the Prison Litigation Reform Act's (PLRA) exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance.  Accordingly, because Defendants have not met their burden by attaching documentation supporting their assertion that Plaintiff did not exhaust his claims against Defendants Ansell, Weiss, Warr, Kinnunen, Pellow, Etelamaki, Redinger, Tremble, Kommes, Armstrong, Terri Arredia (Smith), Beth Smith, Tollefson, Marscke, Burnett, Lalonde, Haataja, Hill, Jacobson, Nagele,

and Granholm, their motion to dismiss for failure to exhaust administrative remedies (docket #126) should be denied.

Defendant Lesatz filed his motion for summary judgment on March 9, 2007 (docket #84). Plaintiff claims that Defendant Lesatz retaliated against him by lying in response to grievances, moving Plaintiff within AMF, and interfering with Plaintiff's outgoing legal mail. Plaintiff alleges that Defendant Wertenan ordered Plaintiff to move to a cell on A-wing on September 15, 2004, and that he informed Plaintiff that he was told to do so by Defendant Lesatz. Plaintiff claims that he had previously written a grievance on Defendant Wertenan  Plaintiff states that he filed a grievance on Wertenan following the move, asserting that the move was retaliatory. Plaintiff alleges that Defendant Lesatz did not interview Plaintiff on his grievance, but later lied on the grievance response by indicating that Plaintiff had been interviewed. When Plaintiff asked Defendant Lesatz why he lied on the grievance, Defendant Lesatz stated that Plaintiff filed too many grievances and that was why he had been placed on A-wing. Plaintiff contends that A-wing is used for disruptive prisoners and is the worst wing at AMF.

Plaintiff also claims that on October 22, 2004, he attempted to send legal property to his attorney in three large envelopes. On November 1, 2004, two of the envelopes were returned in the regular mail. Both envelopes had been opened and most of the documents were missing. Plaintiff filed grievances regarding the treatment of his mail. On November 4, 2004, Defendant Lesatz moved Plaintiff to C-Wing for a "new start." On November 18, 2004, while Plaintiff was in the shower, his cell was "tossed," his legal papers were dumped on the floor, and his Sixth Circuit Appeal was taken. Defendant Lesatz told Plaintiff that he would investigate the situation. Defendant

Lesatz later told Plaintiff that he had checked the log, which indicated that Plaintiff refused to come out for a shower on that date.

Plaintiff alleges that on January 22, 2005, he asked Defendant Lesatz to notarize an affidavit regarding Plaintiff's problems at AMF. Plaintiff attempted to send the affidavit to this court as part of Case No. 2:04-cv-188 and to the Sixth Circuit Court of Appeals as part of Case No. 04-2368. Plaintiff claims that neither of the docket sheets for these two cases show that the affidavit was ever received by the courts. Plaintiff states that on January 26, 2005, he gave Defendant Lesatz a letter to mail to his attorney by expedited legal mail. Plaintiff claims that Defendant Lesatz gave him a receipt, but that the receipt was removed from his cell the next day by Defendant Kutchie. Plaintiff contends that Defendant Lesatz never mailed his letter and that Defendant Kutchie covered up that fact by taking the receipt.

Defendant Lesatz states that he is entitled to summary judgment on Plaintiff's claim that his transfer from one administrative segregation unit to another was retaliatory. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a prison grievance is constitutionally-protected conduct for which a prisoner cannot be retaliated against. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000). The adverseness inquiry is an objective one, and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness;" the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002).

Plaintiff cannot show that his transfer from one administrative segregation unit to another was an adverse action taken against him for filing grievances. As the Sixth Circuit explained in *Ward v. Dyke,* 58 F.3d 271 (6th Cir. 1995):

> Prisoners do not have a constitutional right to be incarcerated in any particular institution. *See Meachum v. Fano*, 427 U.S. 215 (1976). Moreover, the Supreme Court has held repeatedly that the ability to transfer prisoners is essential to prison management, and that requiring hearings for such transfers would interfere impermissibly with prison administration. *Id.*; *Olim v. Wakinekona*, 461 U.S. 238 (1983); *Montanye v. Haymes*, 427 U.S. 236 (1976). "Whatever expectation the prisoner may have in remaining at a particular prison so long as he behaves himself, it is too ephemeral and insubstantial to trigger procedural due process protections as long as prison officials have discretion to transfer him for whatever reason or for no reason at all." *Meachum*, 427 U.S. at 228.

*Ward*, 58 F.3d at 274. "Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005). *See, e.g., Smith v. Yarrow*, 78 F. App'x. 529, 543 (6th Cir. 2003) ("transfer from one prison to another prison cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights") (internal

quotation marks omitted).  If, however, a foreseeable consequence of a transfer would be to substantially inhibit a prisoner's ability to access the courts, then such a transfer could be considered an "adverse action" that would deter a person of ordinary firmness from continuing to engage in the protected conduct. *See Sigger-El*, 412 F.3d at 702 (holding that a transfer was an "adverse action," where the transfer resulted in plaintiff losing a high paying job that paid for his lawyer fees and moved him further from the attorney); *Johnson v. Beardslee,* No. 1:06-CV-374, 2007 WL 2302378, at *5 (W.D. Mich. Aug. 8, 2007).

Plaintiff's transfer was from one administrative segregation unit to another.  Plaintiff has no constitutional right to remain in the same unit or to prevent a transfer to another level II facility for a permissible reason.  *Ward*, 58 F.3d at 274.  Plaintiff claims that A-unit was the "worst" unit at AMF because it was for unmanageable prisoners.  However, Plaintiff fails to allege any specific facts showing that his confinement in A-unit was significantly different from his confinement in any other administrative segregation unit.  Therefore, the transfer is insufficient to constitute an adverse action and Plaintiff fails to state a claim for retaliation.

Moreover, in the opinion of the undersigned, Plaintiff's claim that Defendant Lesatz "lied" on grievance responses fails to constitute an adverse action for purposes of a retaliation claim. The undersigned notes that Plaintiff does not have a federally protected interest in the prison's grievance procedure.  *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994), *cert. denied*, 514 U.S. 1022 (1995).  In addition, in the opinion of the undersigned, merely lying on a grievance response is not conduct "*capable* of deterring a person of ordinary firmness" from exercising their constitutional rights. *Bell v. Johnson*, 308 F.3d at 606.  Therefore, the undersigned recommends that Defendant Lesatz be granted summary judgment on this claim.

- 15 -

Finally, as noted above, Plaintiff claims that Defendant Lesatz failed to send out mail to Plaintiff's "attorney" Ronald McDuffie on January 26, 2005.  However, Defendant Lesatz states that he spoke to McDuffie during the course of a February 15, 2005, grievance investigation and McDuffie denied representing Plaintiff or having any contact with him.  In addition, Defendant Lesatz offers a copy of the step I response to AMF-05-01-00346-15F, which states:

> [Resident Unit Manager] LeSatz stated that at no time did he pick up mail from the grievant on this date.  A review of the housing unit log book indicates that [Case Manager] Arredia announced a warning for legal rounds at 0743 hours.  The legal rounds were completed by [Case Manager] Arredia at 0905 hours per the unit log book.

(*See* Defendant Lesatz' Exhibit A, Attachment #6.)  Therefore, in the opinion of the undersigned, Defendant Lesatz is entitled to summary judgment on this claim.

In addition, should Plaintiff be attempting to assert an access to courts claim, such a claim also lacks merit.  In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court recognized a prisoner's fundamental right of access to the courts.  While the right of access to the courts does not allow a State to prevent an inmate from bringing a grievance to court, it also does not require the State to enable a prisoner to discover grievances or litigate effectively.  *Lewis v. Casey*, 518 U.S. 343 (1996).  Thus, *Bounds* did not create an abstract, free-standing right to a law library, litigation tools, or legal assistance.  *Id.* at 351 (1996).  Further, the right may be limited by legitimate penological goals, such as maintaining security and preventing fire or sanitation hazards.  *See Acord v. Brown*, No. 91-1865, 1992 WL 58975 (6th Cir. March 26, 1992); *Hadix v. Johnson*, No. 86-1701, 1988 WL 24204 (6th Cir. March 17, 1988); *Wagner v. Rees*, No. 85-5637, 1985 WL 14025 (6th Cir. Nov. 8, 1985).

- 16 -

To state a claim, an inmate must show that any shortcomings in the library, litigation tools, or legal assistance caused actual injury in his pursuit of a legal claim. *Lewis*, 518 U.S. at 351; *Talley-Bey*, 168 F.3d at 886; *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985). An inmate must make a specific claim that he was adversely affected or that the litigation was prejudiced. *Vandiver v. Niemi*, No. 94-1642, 1994 WL 677685, at *1 (6th Cir. Dec. 2, 1994). Particularly, an inmate cannot show injury when he still has access to his legal materials by request, *Kensu*, 87 F.3d at 175, when he fails to state how he is unable to replicate the confiscated documents, *Vandiver*, 1994 WL 677685, at *1, or when he could have received the material by complying with the limits on property, e.g., where he had the opportunity to select the items that he wanted to keep in his cell, or when he had an opportunity to purchase a new footlocker that could hold the property. *Carlton v. Fassbender*, No. 93-1116, 1993 WL 241459, at *2 (6th Cir. July 1, 1993).

As noted above, Attorney McDuffie denied any relationship with Plaintiff. Therefore it is clear that any interference with mail to McDuffie did not result in any actual injury to a pending or contemplated action. Therefore, Defendant Lesatz is entitled to summary judgment on this claim.

Defendant Lesatz claims that he is entitled to qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used

to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

The procedure for evaluating claims of qualified immunity is tripartite:  First, we determine whether a constitutional violation occurred;  second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012.  An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful.  Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff.  Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998).  Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge.  "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible

than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40.  *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus qualified immunity is not triggered only where the very action in question was previously held unlawful.  *Anderson*, 483 U.S. at 639-40.  Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights.  *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983.  Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty.  *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action

to prevent a patient from being beaten). *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d at 429. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991).

In the opinion of the undersigned, Plaintiff's assertions against Defendant Lesatz fail to state a claim upon which relief can be granted. Accordingly, Defendant Lesatz is entitled to qualified immunity. Based on the reasons set forth above, the undersigned recommends that Defendant Lesatz' motion for summary judgment (docket #84) be granted.

In their brief in support of their motion for summary judgment (docket #142), Defendants Burke, Edlund, Haataja, Hoover, Jondreau, Lampella, LaTendresse, Luetzow, Miller, Perry, Sweeney, and Wertenan state that they are entitled to summary judgment because they are being sued solely in their official capacities and Plaintiff is seeking only damages. In addition,

Defendant Nagele asserts the same claim in his motion for summary judgment (docket #148). As noted by Defendants, Plaintiff failed to specify capacity in his complaint, for which his complaint may be dismissed.  Defendants cite *Wells v. Brown*, 891 F.2d 591, 593 (6th Cir. 1989), in support of this assertion.  However, in *Moore v. City of Harriman*, 272 F.3d 769 (6th Cir. 2001), the Sixth Circuit noted that "post- *Wells* jurisprudence shows that we have applied a "course of proceedings" test to determine whether § 1983 defendants have received notice of the plaintiff's intent to hold them personally liable, albeit without clearly labeling the test as such."  *Moore*, 272 F.3d at 772; *Shepherd v. Wellman*, 313 F.3d 963, 968 (6th Cir. 2002).

> The "course of proceedings" test considers such factors as the nature of the plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to the complaint, particularly claims of qualified immunity, to determine whether the defendant had actual knowledge of the potential for individual liability.

*Moore*, 272 F.3d at 772, n. 1.

In this case, Plaintiff's claims that Defendants acted maliciously and sadistically.  In addition, Plaintiff requests damages.  At least one of the defendants, Defendant Lesatz, raised qualified immunity as a defense to Plaintiff's claims.  In addition, Plaintiff makes clear in his response to the motion for summary judgment (docket #121) that he intended to sue Defendants in their "personal and official" capacities.  Therefore, the undersigned concludes that Defendants Burke, Edlund, Haataja, Hoover, Jondreau, Lampella, LaTendresse, Luetzow, Miller, Perry, Sweeney, Wertenan and Nagele are not entitled to summary judgment on this issue.

Defendants Burke, Edlund, Haataja, Hoover, Jondreau, Lampella, LaTendresse, Luetzow, Miller, Perry, Sweeney, and Wertenan also claim that Plaintiff's retaliation claims lack merit and should be dismissed.  Initially, Defendants claim that Defendant Wertenan is entitled

summary judgment because there is no genuine issue of material fact that he violated Plaintiff's constitutional rights. Plaintiff alleges that on August 13, 2004, he turned in a slip requesting law books from the library, but Defendant Wertenan removed the slip and refused to give Plaintiff the law books. On August 20, 2004, Defendant Wertenan told Plaintiff that he was a "rat" and that the "games were on." Defendant Wertenan also told Plaintiff that once he moved to A-wing, he would be assaulted. Plaintiff sent a letter regarding this threat to the Michigan State Police. Plaintiff later learned that his letter was never sent out. Defendant Wertenan told Plaintiff that he was never going back to level II and wrote a false misconduct for threatening behavior, in which he mentioned Plaintiff's letter to the Michigan State Police.

Plaintiff alleges that on August 23, 2004, during legal rounds, Plaintiff gave Defendant Jondreau a copy of the letter to the Michigan State Police, as well as a signed expedited legal mail form. That evening, Defendant Wertenan returned what appeared to be the same letter to Plaintiff, but the envelope had blank paper in it. Another envelope addressed to Plaintiff from a friend also contained blank paper. Plaintiff complained about Defendant Wertenan's conduct to Defendants Edlund, Luoma, Arredia, and Luetzow, to no avail. Plaintiff states that every time he gave Defendant Arredia mail or grievances, Defendant Wertenan would tell Plaintiff exactly what he had written. Plaintiff never got responses to any of his mail.

Plaintiff also claims that on September 4, 2004, Defendant Wertenan had Plaintiff pulled out of his cell and stripped of all his property by Defendants Obiden, Johnson, Lindberg, and Holma. Plaintiff was never given a property removal slip itemizing what was taken. Plaintiff filed several grievances regarding this issue. On September 4, 2004, Plaintiff "went on a writ" in his criminal case, and was taken to the typing room to go through his property. Plaintiff's property was in garbage bags and smelled like mildew and it appeared that something had been poured in the bags.

Some of the property was stuck together and destroyed and a lot of the items were missing.  When Plaintiff returned from court, he reported the damage to the inspector, as well as to Defendant Arredia.  Plaintiff also filed grievances, to no avail.  Plaintiff claims that he was on "the program," which means that he was treated badly by all shifts and could get no relief or assistance.

Plaintiff asserts that on September 15, 2004, Defendant Wertenan ordered him to pack up his property.  Before Plaintiff left his cell, he sent some paperwork to the inmate across the hall by using fish line.  Plaintiff states that he received mail from that inmate four months later which stated that the paperwork had been confiscated.  Plaintiff alleges that Defendant Haataja came to his cell and told Plaintiff that he had orders from Defendant Lesatz to move Plaintiff.  Defendants Wertenan, Kinnunen, Johnson and other staff pulled Plaintiff out of his cell and took Plaintiff to the common room.  Plaintiff was told to give up his property because they needed to look through it.  Plaintiff was eventually placed in a cell without his property.  The next day, Plaintiff was hungry, cold, tired and on the verge of a breakdown, so he told Defendant Haataja that he would do whatever Defendants wished.  Defendant Wertenan subsequently came to Plaintiff's cell and asked Plaintiff "did [he] give?"  Plaintiff answered that he did.  Plaintiff's property was returned to him later that day.  In addition, Plaintiff states that his footlocker restriction was removed early because Defendants thought he had given up on his litigation.  After Defendant Wertenan learned that Plaintiff still had pending grievances that he refused to sign off on, Defendant Wertenan began harassing Plaintiff again.  Plaintiff's mail and pictures were taken, his food was tampered with, and he continued to receive false misconduct tickets.  Defendants Edlund and Luetzow knew about this situation and did nothing to remedy it.

Plaintiff claims that Defendant Lesatz told him that he was placed on A-wing because he wrote too many grievances.  A-wing was used for disruptive and assaultive prisoners, so it was

loud and foul smelling.  Defendant Wertenan wrote several false misconduct tickets on Plaintiff.

On November 18, 2004, Plaintiff was locked in the shower by an unnamed corrections officer.

While Plaintiff was in the shower, Defendant Wertenan asked Plaintiff about a complaint he had

filed and called him a "rat" and a "fuck boy."  Plaintiff wrote to Defendant Edlund regarding the

incident and requested a review of the unit camera footage, which would have shown Defendant

Wertenan standing in the unit mocking Plaintiff.  However, the footage was not reviewed.

Defendants state that the special housing unit log shows that Plaintiff refused to

accept the law books when they were offered.  According to Defendant Wertenan's affidavit and the

log book entries, the law books were placed on Plaintiff's upper slot, but Plaintiff made no attempt

to pick them up.  Defendant Wertenan also attests that he never threatened Plaintiff, nor did he refuse

to mail out any letters.  On September 4, 2004, Plaintiff was repeatedly slamming his footlocker lid,

so Defendant Wertenan wrote a misconduct ticket on him and imposed a footlocker restriction.

After the restriction was imposed, Plaintiff was able to pick out any needed legal property.  Plaintiff

was given the chance to go through his property on September 5, 6, 7, 8, and 15, 2004, but refused.

On September 16, 2004, Plaintiff asked for his property and it was returned to him.   On

September 15, 2004, Plaintiff was moved to A-wing due to a recent increase in major misconduct

tickets and disruptive behavior.  (*See* docket #144, Wertenan affidavit and log book entries for

September 4-8, 2004, and September 15-16, 2004.)

With regard to Plaintiff's claim that the misconduct was retaliatory, the undersigned

notes that this claim is barred by barred by the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994).

Plaintiff claims that Defendant Wertenan wrote false misconducts against him in retaliation for

exercising, or threatening to exercise, his First Amendment rights to file grievances and law suits.

The Supreme Court has held that a claim for equitable relief and monetary damages that necessarily

implies the invalidity of the punishment imposed, is not cognizable under § 1983 until the conviction has been overturned. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997). The Court relied upon *Heck*, 512 U.S. at 486-87, which held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid,* a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *Edwards*, 520 U.S. at 646 (emphasis in original). Thus, where a prisoner's claim of unfair procedures in a disciplinary hearing necessarily implies the invalidity of the deprivation of good-time credits, his claim is not cognizable under § 1983. *Id.*; *see also Bailey v. McCoy*, No. 98-1746, 1999 WL 777351, at *2 (6th Cir. Sept. 21, 1999) (collecting Sixth Circuit decisions applying *Edwards* to procedural due process challenges).

    In the opinion of the undersigned, Plaintiff's claims necessarily imply the invalidity of his misconduct convictions. Under *Edwards*, Plaintiff must first show that his misconduct convictions have been invalidated before his § 1983 action will be cognizable. *See Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000) (prisoner's claim that his due process and Eighth Amendment rights were violated by false, retaliatory misconduct charges necessarily implies the invalidity of the guilty findings on the misconduct tickets). Under Michigan law, a prisoner may seek a rehearing of a decision made by the Hearings Division. MICH. COMP. LAWS § 791.254; Policy Directive 03.03.105, ¶ X. Thereafter, a prisoner may appeal the misconduct conviction to the state circuit court. MICH. COMP. LAWS § 791.255(2); Policy Directive 03.03.105, ¶ AA (concerning appeal). If Plaintiff is unsuccessful in the circuit court, he could then apply for leave to appeal to the Michigan Court of Appeals and Michigan Supreme Court. *See* M.C.R. 7.203(B); 7.302. If he is not successful in the state courts, he may then seek to overturn the

convictions by bringing a federal habeas corpus action.[5]  Because Plaintiff has not shown that his convictions have been invalidated, his claims are not presently cognizable.

As noted above, Plaintiff claims that the remaining actions on the part of Defendant Wertenan was motivated by a desire to retaliate against Plaintiff.  Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Thaddeus-X*, 175 F.3d at 394.  Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The adverseness inquiry is an objective one, and does not depend on how a particular plaintiff reacted.  The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness;" the plaintiff need not show actual deterrence.  *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002).  Plaintiff need merely show that the retaliatory acts amounted to more

---

[5]A misconduct conviction results in the loss of good-time credits, which is equivalent to a loss of a "shortened prison sentence."  *See Wolff v. McDonnell*, 418 U.S. 539, 556-57 (1974).  A challenge to a "shortened prison sentence" is a challenge to the fact or duration of confinement that is properly brought as an action for habeas corpus relief.  *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).  However, a prisoner must exhaust available state remedies before bringing a habeas corpus action, which would include appealing the conviction through the state courts.  *See* 28 U.S.C. § 2254(b)(1).

than a de minimis injury.  *Id.*  The purpose of the standard is to avoid trivializing the First

Amendment by eliminating suits based upon insignificant acts of retaliation.  *Id.*

Filing grievances is constitutionally protected conduct under the First Amendment.

*See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Noble v. Schmitt*, 87 F.3d 157, 162 (6th

Cir. 1996).  Plaintiff, however, cannot show that his transfer from one unit to another was an adverse

action taken against him for filing grievances.  As the Sixth Circuit explained in *Ward v. Dyke,* 58

F.3d 271 (6th Cir. 1995):

> Prisoners do not have a constitutional right to be incarcerated in any
> particular institution. *See Meachum v. Fano*, 427 U.S. 215 (1976).
> Moreover, the Supreme Court has held repeatedly that the ability to
> transfer prisoners is essential to prison management, and that
> requiring hearings for such transfers would interfere impermissibly
> with prison administration. *Id.*; *Olim v. Wakinekona*, 461 U.S. 238
> (1983); *Montanye v. Haymes*, 427 U.S. 236 (1976). "Whatever
> expectation the prisoner may have in remaining at a particular prison
> so long as he behaves himself, it is too ephemeral and insubstantial
> to trigger procedural due process protections as long as prison
> officials have discretion to transfer him for whatever reason or for no
> reason at all." *Meachum*, 427 U.S. at 228.

*Ward*, 58 F.3d at 274.  "Since prisoners are expected to endure more than the average citizen, and

since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of

ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d

693, 701 (6th Cir. 2005). *See, e.g., Smith v. Yarrow*, 78 F. App'x. 529, 543 (6th Cir. 2003) ("transfer

from one prison to another prison cannot rise to the level of an adverse action because it would not

deter a person of ordinary firmness from the exercise of his First Amendment rights") (internal

quotation marks omitted).  If, however, a foreseeable consequence of a transfer would be to

substantially inhibit a prisoner's ability to access the courts, then such a transfer could be considered

an "adverse action" that would deter a person of ordinary firmness from continuing to engage in the

protected conduct. *See Sigger-El*, 412 F.3d at 702 (holding that a transfer was an "adverse action," where the transfer resulted in plaintiff losing a high paying job that paid for his lawyer fees and moved him further from the attorney); *Johnson v. Beardslee,* No. 1:06-CV-374, 2007 WL 2302378, at *5 (W.D. Mich. Aug. 8, 2007).

Plaintiff does not specify any facts showing that his transfer would constitute an "adverse action." Plaintiff states that the unit to which he was transferred was loud and malodorous. However, such allegations appear to constitute no more than a de minimis injury. Therefore, the transfer is insufficient to constitute an adverse action and Plaintiff fails to state a claim for retaliation.

In addition, Plaintiff's claims that Defendant Wertenan threatened him, harassed him about his outgoing mail, and temporarily deprived him of his property are contradicted by both Defendant Wertenan's affidavit and the unit log book. Plaintiff has not offered any additional evidence showing that the course of events documented in the log book are false or incorrect or otherwise raise a genuine issue of material fact. Moreover, these allegations appear to constitute no more than harassment. Claims of abusive language and general harassment do not state a claim under the Eighth Amendment or the substantive due process clause. *Ivey v. Wilson*, 832 F.2d 950 (6th Cir. 1987); *Ishaaq v. Compton*, 900 F. Supp. 935, 944 (W.D. Tenn., 1995); *Meadows v. Gibson*, 855 F. Supp. 223, 225 (W.D. Tenn., 1994). In the opinion of the undersigned, such conduct would not deter a person of ordinary firmness from filing grievances or lawsuits. Therefore, Defendant Wertenan is entitled to summary judgment on these claims.

With regard to Plaintiff's claims that he was assaulted by Defendants Hoover and Reynolds on February 28, 2005, Defendants offer the log book entry for that date and the affidavit of Defendant Hoover to support their assertion that they are entitled to summary judgment on this claim (docket #142, Exhibit I, Hoover affidavit and log book entry for February 28, 2005.) Plaintiff

claims that he was pushed against the wall and that his wrist was twisted forcefully while he was wearing handcuffs.  Plaintiff does not appear to be claiming that he suffered any significant injuries as a result.

The court characterizes this claim as one under the Eighth Amendment, which prohibits cruel and unusual punishment.  U.S. CONST., amend. VIII.  An Eighth Amendment claim comprises an objective and subjective component:  (1) a sufficiently grave deprivation and (2) a sufficiently culpable state of mind.  *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977 (1994); *Rodgers v. Jabe*, 43 F.3d 1082, 1086 (6th Cir. 1995).  Plaintiff must prove these elements by a preponderance of the evidence.  *Brooks v. Celeste*, 39 F.3d 125, 127-128 (6th Cir. 1994).  In the opinion of the undersigned, Plaintiff's allegations are insufficient to state a claim because the alleged deprivation is not sufficiently grave.

Only those deprivations denying "the minimal civilized measure of life's necessities" are sufficiently grave for an Eighth Amendment claim.  *Hudson v. McMillian*, 503 U.S. 1, 8-9, 112 S. Ct. 995, 1000 (1992).  A de minimis use of physical force is beyond constitutional recognition, provided that the use of force is not of a sort "repugnant to mankind."  *Id*. at 9-10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)); *see Norman v. Taylor*, 25 F.3d 1259, 1264 (4th Cir. 1994), *cert. denied* 513 U.S. 1114, 115 S. Ct. 909 (1995) ("absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is de minimis).  Federal courts have routinely held that a single push, shove, punch, or blow by a prison guard does not rise to the level of a constitutional violation.  *Neal v. Miller*, 778 F. Supp. 378, 383-384 (W.D. Mich. 1991) (collecting cases).  The same hold true even when the push or shove appears to be unnecessary.  *Hampton v. Alexander*, No. 95-3457, 1996 WL 40237 (6th Cir. Jan. 31, 1996).  There are no extraordinary or unusual circumstances surrounding the alleged incident.  Plaintiff does not

appear to have been injured, only that he suffered pain during the incident.   Therefore, the undersigned notes that any injury was de minimis.   Thus, Plaintiff's allegation that he was "assaulted" on February 28, 2005, does not rise to the level of a constitutional deprivation.

Plaintiff also claims that he was assaulted on July 17, 2005, by Defendants Hoover and Reynolds.   Defendants offer a copy of a critical incident report and a major misconduct hearing report in support of their claim for summary judgment (docket #142, Exhibit I, critical incident report and August 2, 2005, hearing report.)   According to the hearing officer, the evidence showed that Plaintiff kicked both Defendants Hoover and Reynolds and that the officers' use of force was reasonable.   Consequently, Plaintiff was found guilty of the major misconduct of assault and battery. As noted above, claims which necessarily invalidate a major misconduct conviction are barred by the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994).   Therefore, Defendants are entitled to summary judgment on these claims.   In addition, Plaintiff's claim that Defendant Hoover issued a retaliatory misconduct against him is also barred by the doctrine set forth in *Heck*.

With regard to Plaintiff's claims against Defendants Luetzow and Edlund, Defendants assert that they are entitled to summary judgment because they were not personally involved in any alleged misconduct.   Liability under Section 1983 must be based on more than merely the right to control employees.   *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978).   Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*.   *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325.   A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct.   *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459

U.S. 833 (1982).  *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights.  *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985).  However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct.  *Leach*, 891 F.2d at 1246.  Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable.  *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992).  In addition, plaintiff must show that defendant had some duty or authority to act.  *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991).  In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability.  *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988).  Finally, supervisory liability claims cannot be based on simple negligence.  *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

As noted by Defendants in the motion for summary judgment, Plaintiff has not alleged facts establishing that Defendants Luetzow and Edlund were personally involved in the

- 31 -

activity which forms the basis of his claim.  Defendants Luetzow and Edlund only roles in this action involve the denial of administrative grievances or the failure to act.  Defendants Luetzow and Edlund cannot be liable for such conduct under § 1983.  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264, 120 S. Ct. 2724 (2000).  Accordingly, the Court concludes that Defendants Luetzow and Edlund are entitled to summary judgment.

Defendants state that Plaintiff has failed to allege any facts against Defendant Miller which show that he violated Plaintiff's constitutional rights.  Plaintiff alleges that on February 21, 2005, he gave Defendant Miller a slip to request law books and that Defendant Reynolds never gave him the books.  In addition, Plaintiff claims that Defendant Miller failed to intervene while Defendant Reynolds confiscated magazines belonging to Plaintiff.  As noted above, a defendant cannot be held liable for a failure to act unless such a failure is to prevent harm to a prisoner.  In that case, plaintiffs must show that prison officials acted with "deliberate indifference" to a substantial risk that the Plaintiff would suffer serious harm.  *Farmer,* 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir.1996); *Taylor v. Mich. Dep't of Corr.* 69 F.3d 76, 79 (6th Cir.1995).  *See Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001).  Plaintiff's allegations fail to assert such a claim.  Therefore, Defendant Miller is entitled to summary judgment.

Plaintiff claims that Defendant Jondreau mishandled his mail on February 25, 2005.  Plaintiff had received a money order from his wife which he could not cash in the prison office, so he wrote to the court asking that it either be applied to the money owed the court, or be returned to his wife.  Plaintiff gave the letter to the court to Defendant Jondreau for expedited mailing, but it was not eligible for such processing because it did not relate to pending litigation.  Plaintiff sent numerous kites in an attempt to discover what had happened to the letter and the money order.  At

some point, Plaintiff was told that the money order had been returned to his wife and the letter had been returned to him.  Plaintiff was advised to contact his wife to see if she had received the money order.  In the opinion of the undersigned, these allegations fail to show any violation of Plaintiff's constitutional rights.  The money order was returned to Plaintiff's wife and he was not prejudiced in any pending litigation.  Therefore, there was no violation of either the First or Fourteenth Amendments.  Consequently, Defendant Jondreau is entitled to summary judgment.

Plaintiff claims that Defendant Lampella encouraged him to kill himself on July 9, 2005, after Plaintiff asked a nurse what would happen if he took all his medications at once.  In addition, Plaintiff claims that Defendant Lampella was one of three officers who put him on suicide watch without a mattress in retaliation for Plaintiff's litigation activities, causing him back pain. Defendants first assert that this claim is properly dismissed for failure to exhaust administrative remedies.  However, as noted above in the discussion of Defendants' motion to dismiss for failure to exhaust administrative remedies, Defendants are required to attach documentation supporting their assertion that Plaintiff did not exhaust his remedies against Defendant Lampella. *Jones v. Bock*, 127 S. Ct. 910 (2007).  Because Defendants have not met their burden, Defendant Lampella is not entitled to dismissal on this basis.

Defendants also state that Defendant Lampella is entitled to summary judgment because the alleged misconduct does not rise to the level of an Eighth Amendment violation.  The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).

The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-601 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

Use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997)(verbal harassment is insufficient to state a claim); *Murray v. United States Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at * 3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at * 2 (6th Cir. Dec. 13, 1996) ("Verbal harassment and idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment.").

The fact that suicide watch requires prisoners to be provided with a non-destructible mattress, which may not be as comfortable as a normal mattress, does not rise to the level of an Eighth Amendment violation.  Nor does such conduct constitute an adverse action for purposes of a retaliation claim.  Accordingly, Defendant Lampella is entitled to summary judgment on Plaintiff's claims arising from his alleged verbal abuse.

Plaintiff claims that Defendant LaTendresse was present during the July 17, 2005, assault by Defendants Hoover and Reynolds.  However, as noted above, this claim is barred by the doctrine set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994).  Plaintiff also claims that Defendant LaTendresse was involved in the November 1, 2004, failure to send mail to his attorney.  Defendants claim that Plaintiff did not properly exhaust this issue because his grievance naming Defendant Latendresse was untimely filed.  However, as noted above in the discussion of Defendants' motion to dismiss for failure to exhaust administrative remedies, Defendants are required to attach documentation supporting their assertion that Plaintiff did not exhaust his remedies against Defendant LaTendresse.  *Jones v. Bock*, 127 S. Ct. 910 (2007).  Because Defendants have not met their burden, Defendant LaTendresse is not entitled to dismissal on this basis.

Defendants also claim that Defendant LaTendresse is entitled to summary judgment because, as noted above, the mail was not to his attorney as he claimed.  Defendants state that when Plaintiff sent the mail out, it may have been opened by attorney McDuffie.  At any rate, when the letter was returned to the facility, it was subject to being searched as incoming mail under MDOC policy and any materials which violated the mail policy were subject to confiscation.  Finally, Defendants assert that Plaintiff fails to specify how Defendant LaTendresse was involved in the alleged misconduct.  Plaintiff merely claims that Defendant LaTendresse was the "bubble officer" on the day in question.  As bubble officer, Defendant LaTendresse was not responsible for opened

- 35 -

or damaged mail.  For the reasons stated by Defendants, the undersigned concludes that Defendant LaTendresse is entitled to summary judgment.

With regard to Defendant Sweeney, the only claim of wrongdoing is that he failed to move Plaintiff from a detention cell on or about July 9, 2005.  According to Plaintiff's response, he had daily contact with Defendant Sweeney through legal rounds.  On July 9, 2005, he was taken off detention status and moved into a regular cell.  However, Defendant Warr had Plaintiff placed back in a detention cell.  Plaintiff brought this to Defendant Sweeney's attention, but Defendant Sweeney merely told Plaintiff to file a grievance.  Plaintiff was on modified access and requested a grievance, but his request was denied.  Once Plaintiff got off modified access status, he filed a grievance which was improperly denied as untimely because Plaintiff remained in the detention cell.  Plaintiff claims that he was placed in a detention cell because it was easier to deny him food trays, law books, and other items.  Plaintiff gave a lot of his mail and administrative complaints to Defendant Sweeney while in this cell, and the other officers would mock what Plaintiff had said in his complaints.  Because of this, Plaintiff believes that Defendant Sweeney was sharing information with staff.

Plaintiff's allegations against Defendant Sweeney are somewhat vague and fail to rise to the level of a constitutional violation.  As noted by Defendants, Plaintiff appears to assert that Defendant Sweeney kept him in punitive segregation in violation of his constitutional rights.  Defendants note that Plaintiff was placed in a segregation cell in order to prevent assaults on staff because the slots could be locked.  Defendants state that Plaintiff was not placed on detention restrictions because he did not have detention time to serve.

To determine whether segregation of an inmate from the general prison population involves the deprivation of a liberty interest protected by the due process clause, the Court must determine if the segregation imposes an "atypical and significant" hardship on the inmate "in relation

- 36 -

to the ordinary incidents of prison life." *Jones v. Baker*, 155 F.3d 910, 811 (6th Cir. 1998) (quoting

*Sandin v. Conner*, 515 U.S. 472, 483 (1995)).   Under various circumstances, the Sixth Circuit has

repeatedly found that confinement to segregation does not present an "atypical and significant"

hardship implicating a protected liberty interest.   *See Jones*, 155 F.3d at 812-23 (two years of

segregation while inmate was investigated for murder of prison guard in riot); *Rimmer-Bey v. Brown*,

62 F.3d 789, 790-91 (6th Cir. 1995) (inmate serving life sentence was placed in segregation after

serving thirty days of detention for misconduct conviction of conspiracy to commit assault and

battery); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir.1997) (one year of segregation after inmate was

found guilty of possession of illegal contraband and assault and where reclassification was delayed

due to prison crowding).   Plaintiff has failed to make any allegations that his segregation was

"atypical and significant."   Accordingly, the undersigned recommends that Defendant Sweeney be

granted summary judgment.

        Defendants state that Defendant Burke is entitled to summary judgment because she

is entitled to absolute immunity.   Plaintiff claims that Defendant Burke conspired to violate his rights

because she watched video of the events at issue and failed to find that the officers assaulted

Plaintiff.   The Sixth Circuit, recognizing that a Michigan hearings officer has adjudicatory functions

spelled out by statute in the nature of an administrative law judge, has held that hearings officers are

entitled to absolute judicial immunity in relation to actions within the officer's authority.   *Shelly v.

Johnson*, 849 F.2d 228, 229 (6th Cir. 1988); MICH. COMP. LAWS §§ 791.251-255.   *See also Williams

v. McGinnis*, Nos. 02-1336, 02-1837, 2003 WL 245352, at *2 (6th Cir. Jan. 31, 2003) (recognizing

that Michigan's prison hearings officers are entitled to absolute immunity); *Thompson v. Mich. Dep't

of Corr.*, No. 01-1943, 2002 WL 22011, at *1 (6th Cir. Jan. 2, 2002) (same); *Gribble v. Bass*, No.

93-5413, 1993 WL 524022, at *2 (6th Cir. Dec. 16, 1993) (same).   Accordingly, the undersigned

concludes that Defendant Burke is entitled to summary judgment.   Based on the above, the undersigned recommends that Defendants Burke, Edlund, Haataja, Hoover, Jondreau, Lampella, LaTendresse, Luetzow, Miller, Perry, Sweeney, and Wertenan's motion for summary judgment (docket #141) be denied with regard to the official capacity claims, and granted on the merits with regard to Defendants Wertenan, Hoover, Reynolds, Luetzow, Edlund, Miller, Jondreau, Lampella, LaTendresse, Sweeney and Burke.   Consequently, because Defendants do not address the merits of Plaintiff's claims against Defendants Perry and Haataja, they are not entitled to summary judgment based on this motion.

Defendant Nagele filed a motion for summary judgment (docket #148), which asserts that he is immune from damages because Plaintiff did not specify that he was suing Defendant Nagele in his individual capacity.   However, for the reasons noted above, this claim lacks merit. Plaintiff claims that Defendant Nagele failed to honor his request to use the restroom on February 10, 2005, and failed to provide cleaning supplies after Plaintiff urinated on himself.   According to Plaintiff, Defendants Nagele and Resident Unit Officer Schneider were running showers and walked past him while he was in the typing room, ignoring his requests to use the restroom.   Defendant Nagele offers his affidavit in support of the motion for summary judgment (docket #152).   In his affidavit, Defendant Nagele attests that in Plaintiff's unit, the typing room is on the same side as wings A and B.   On February 10, 2005, Resident Unit Officers Schneider and Vien ran showers on the A/B side, while Defendant Nagele was assigned to C-wing and Resident Unit Officer Joyal was assigned to D-Wing.   Defendant Nagele states that he and Joyal ran showers for the C and D wings, and that he had no reason to go to the A or B wings.   Defendant Nagele also offers a copy of the log book for that date, showing that he was assigned to C-wing.   (*See* docket #149, Exhibit S.)   The undersigned concludes that Defendant Nagele has met his burden of showing that there is no genuine

issue of material fact with regard to this claim and recommends that his motion for summary judgment (docket #148) be granted.

In summary, in the opinion of the undersigned, Defendants have failed to meet the burden of proof required to show that Plaintiff failed to exhaust his administrative remedies. Therefore, Defendants' motion to dismiss (docket #126) is properly denied.  In addition, the undersigned notes that Plaintiff has failed to sustain his burden of proof in response to Defendant Lesatz' motion for summary judgment (docket #84) and Defendant Nagele's motion for summary judgment (docket #148), so that they are properly granted.  With regard to the motion for summary judgment filed by Defendants Burke, Edlund, Haataja, Hoover, Jondreau, Lampella, LaTendresse, Luetzow, Miller, Perry, Sweeney, and Wertenan (docket #141), the undersigned recommends that it be denied with regard to the official capacity claims, and granted on the merits with regard to Defendants Wertenan, Hoover, Reynolds, Luetzow, Edlund, Miller, Jondreau, Lampella, LaTendresse, Sweeney and Burke.  Consequently, because this motion does not address the merits of Plaintiff's claims against Defendants Perry and Haataja, they are not entitled to summary judgment based on this motion.  Finally, the undersigned recommends that Plaintiff's motion to voluntarily dismiss Defendants Kemp and LaLonde (docket #130) be granted.

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:  February 11, 2008

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).